## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

ANTONIO CHAVEZ RODIGUEZ, *on behalf of himself and all others similarly situated,*

*Plaintiff,*

*v.*

HERMES LANDSCAPING, INC.,

*Defendant.*

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Civ. Action No: _____

Plaintiff Antonio Chavez Rodriguez (a/k/a Antonio Chavez), on behalf of himself and all others similarly situated, as and for his Complaint, alleges as follows:

### Preliminary Statement

1.  Plaintiff Antonio Chavez Rodriguez ("Plaintiff" or "Mr. Chavez") is a Mexican national who came to the United States, and Kansas, under the federal H-2B temporary foreign worker visa program to work for Defendant Hermes Landscaping, Inc. (hereafter "Hermes") every year over the course of almost ten years. During all of that time, and specifically within the past five years, Mr. Chavez regularly worked long hours in both Kansas and Missouri, but he was never paid overtime when he worked more than forty hours in a work week. Defendant's failure to pay overtime to Mr. Chavez is apparent on the face of Mr. Chavez's paystubs, which show that Defendant paid straight time for hours as

high as 68 in a single week.   Mr. Chavez also was regularly not paid for all of the hours he worked, and incurred unreimbursed expenses in the years 2012 – 2015 for the benefit of his employer, including an annual recruitment fee of almost one hundred dollars per year paid to a recruiter in Mexico, and close to $150 in annual fees related to the processing of his visa in Mexico.

2.   Mr. Chavez brings this action on behalf of himself and all other similarly-situated employees, that is, all other H-2B workers (the "H-2B workers" or the "Class members") who worked for Hermes since 2012.   Like Mr. Chavez, these workers were never paid overtime, were not paid for all of the hours that they worked, and incurred unreimbursed expenses, including recruitment and visa-processing fees and travel expenses.   All told, Hermes significantly underpaid the hundreds of H-2B workers who did landscaping work for the company in Missouri and Kansas over many years.

3.   Mr. Chavez bring claims for himself and on behalf of the H-2B workers under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and under Kansas and Missouri law.   Plaintiff's FLSA claim is brought as a collective action under 29 U.S.C. § 216(b) on behalf of himself and the other H-2B workers who may opt into this action as permitted by that statute.   Plaintiff's state law claims, including claims for breach of contract and quantum meruit, brought on behalf of himself and the H-2B workers as a class action pursuant to Fed. R. Civ. P. 23.

## Jurisdiction and Venue

4.   The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 216(b) (the Fair Labor Standards Act).

5. The Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiff's state law claims are parts of the same case or controversy as Plaintiff's federal claim.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391. A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

7. Defendant resides and/or does business in this district.

## Parties

8. Named Plaintiff Antonio Chavez came to Kansas from Mexico as an H-2B worker each year between 2007 and 2016 to work for Hermes.

9. Plaintiff maintains his permanent residence in the country of Mexico, as do the other H-2B workers who worked for Hermes.

10. Plaintiff and the H-2B workers are non-exempt employees of Defendant within the meaning of the FLSA, Missouri law, and Kansas law.

11. Hermes Landscaping, Inc. is a Kansas company with its administrative office located at 13030 W. 87th Street Parkway, Lenexa, Kansas.

12. Hermes is a full-service landscaping and irrigation provider which serves the greater Kansas City area. It does both commercial and residential landscape contracting work in Kansas and Missouri.

13. Hermes engages in commerce as defined by 29 U.S.C. § 203, and it has a gross volume business of not less than $500,000 per year.

14. At all times relevant to this action, Defendant was an "employer" of Plaintiff and the other H-2B workers within the meaning of the FLSA, Missouri law, and Kansas law.

15. At all times relevant to this action, Plaintiff and other H-2B workers were "employees" of Defendant within the meaning of the FLSA, Missouri law, and Kansas law.

16. At all times relevant to this action, Defendant "employed" Plaintiff and other H-2B workers within the meaning of the FLSA, Missouri law, and Kansas law.

17. Mr. Chavez consents in writing to becoming a party Plaintiff in this action. (See Ex. 1.)

### Factual Allegations

*H-2B program requirements*

18. Under the guestworker visa program commonly known as the "H-2B program," foreign nationals are granted permission to "com[e] temporarily to the United States to perform ... temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

19. H-2B workers perform unskilled labor for non-agricultural employers throughout the United States. Their visas are limited to work for particular employers and are limited in duration.

20. To be approved to employ workers through the H-2B program, an employer must certify in writing, on ETA Form 9142-B ("Form 9142") to the U.S. Department of Labor ("DOL") that there are insufficient workers within the U.S. available to

perform the work sought, and that the employment of foreign workers will not adversely affect the wages or working conditions of similarly-situated U.S. workers.

21. An employer must also attest that its offered wage "equals or exceeds the highest of the prevailing wage, the applicable Federal minimum wage, the State minimum wage, and local minimum wage, and the employer will pay the offered wage during the entire period of the approved H–2B labor certification." 20 C.F.R. 655.22(e). Employers obtain from DOL determinations of the minimum prevailing wage that must be paid to the H-2B workers they employ. H-2B employers are responsible for the payment of pre-employment expenses visa and travel expenses from H-2B workers' homes. 20 C.F.R. § 655.20(j); 20 C.F.R. § 655.22(g); DOL Wage & Hour Division "Field Assistance Bulletin No. 2009-2." (www.dol.gov/whd/FieldBulletins/FieldAssistanceBulletin2009_2.htm)

22. An employer seeking H-2B labor certification must attest in its application that, among other things, "[d]uring the period of employment that is the subject of the labor certification application, the employer will comply with applicable Federal, State and local employment-related laws and regulations, including employment-related health and safety laws." 20 C.F.R. § 655.22(d).

*Hermes's participation in the H-2B program*

23. Every year since 2011, Defendant Hermes petitioned to sponsor workers as part of the H-2B program and bring them to work in the U.S. In each of those years, Hermes's visa petitions were granted.

24. For the year 2016, Hermes sought 105 worker positions under the H-2B program for the occupation title "landscaping and groundskeeping workers," was granted labor certification for these 105 positions, and employed the workers for whom visas were granted.

25. For the year 2015, Hermes sought 90 worker positions under the H-2B workers for the occupation title "landscaping and groundskeeping workers," was granted labor certification for these 90 positions, and employed the workers for whom visas were granted.

26. For the year 2014, Hermes sought 115 worker positions under the H-2B program for the occupation title "landscaping and groundskeeping workers," was granted labor certification for these 115 positions, and employed the workers for whom visas were granted.

27. For the year 2013, Hermes sought 92 worker positions under the H-2B workers for the occupation title "landscaping and groundskeeping workers," was granted labor certification for these 92 positions, and employed workers for whom visas were granted.

28. For the year 2012, Hermes sought approximately 100 H-2B workers to perform landscaping work, was granted labor certification for these positions, and employed the workers for whom visas were granted.

29. Antonio Chavez was one of the H-2B workers who worked for Hermes for the 2012, 2013, 2014, 2015, and 2016 seasons. The H-2B workers who are members of the proposed class here worked for Hermes during this same time period through the present.

30. In each year beginning in 2012, Hermes entered into work contracts with the H-2B workers. These contracts were based upon Hermes's offer of work on Form 9142, which offer was accepted by the H-2B workers who came to work for Hermes under the terms offered.

31. The written contracts as set forth on the Form 9142s establish the terms and conditions of the work of Mr. Chavez and the H-2B workers, either explicitly and/or by operation of law.

32. In each of the years between 2012 and the present, Hermes was required to pay at least the applicable prevailing wage during the period of the labor certification. 20 C.F.R. § 655.22(e)

33. For work performed in 2016, the prevailing wage that Hermes was required to pay to the Mr. Chavez and the H-2B workers was $12.79, which amount was listed in the Form 9142 for that year. For 2016, Form 9142 also provided that overtime would be paid at a rate of $19.19 per hour.

34. For work performed in 2015, the prevailing wage that Hermes was required to pay was $12.68 per hour, which amount was listed in the Form 9142 for that year.

35. For work performed in 2014, the prevailing wage that Hermes was required to pay the H-2B workers was $9.75, which amount was listed in the Form 9142 for that year.

36. For work performed in 2013, the prevailing wage that Hermes was required to pay the H-2B workers was initially $8.84, which amount was listed in the Form 9142 for that year. For 2013, Form 9142 also provided that overtime would be paid at a rate of $13.26.

37. On April 24, 2013, the Department of Homeland Security and DOL jointly published an Interim Final Rule that revised the methodology by which DOL calculated the prevailing wages for the H-2B program.

38. On July 9, 2013 the DOL issued a supplemental prevailing wage determination applicable to H-2B workers employed by Hermes.

39. This supplemental determination informed Hermes that the prevailing wage rate for the H-2B workers at Hermes was increased to $12.37 upon Hermes's receipt of the DOL notification.

40. Hermes appealed this determination, and the determination was affirmed on August 24, 2013.

41. On August 30, 2013, Hermes sought further review of this notification by way of a Center Director appeal. Upon information and belief, no determination has been made on this further review.

42. Upon information and belief, the prevailing wage that Hermes was required to pay the H-2B workers in 2012 was listed in the Form 9142 for that year.

*The H-2B workers' employment in the U.S.*

43. As is evident from his paystubs, Mr. Chavez regularly worked more than 40 hours in a work week. However, he was never paid an overtime premium of time and one half of his regularly hourly pay rate for his hours above forty.

44. For example, for the week ending May 31, 2016, Mr. Chavez's paystub indicates that he worked 54.49 hours but was not paid an overtime premium. For the week ending June 30, 2015, his paystub indicates that he worked 59.67 hours but he was not paid overtime. For the week ending April 25, 2014, his paystub indicates

that he worked 61.31 hours but he was not paid overtime, and for the week ending March 5, 2013, his paystub indicates that he worked 52.15 hours but was never paid overtime.

45. The other H-2B workers also regularly worked more than forty hours in a work week but were never paid overtime for their hours above forty.

46. Moreover, Mr. Chavez and the H-2B workers were regularly not paid for time that they worked either before or after their regular work shifts. They were required to do approximately one half hour of unpaid work at the beginning of their work days and approximately one half hour of unpaid work at the end of their work days.

47. Other hours worked by Mr. Chavez and the H-2B workers were shaved off of their pay – and were never paid – as is seen by hand-written entries on the workers' time punch cards.

48. Mr. Chavez and the H-2B workers were required to purchase their own uniforms, which included shirts bearing the Hermes name and logo, and hats bearing the same. The expenses of these uniforms constituted an illegal deduction when they reduced the wages of Mr. Chavez and the H-2B workers below the minimum wage and the applicable prevailing wage.

49. In 2013, despite being notified of the increased H-2B prevailing wage shortly after July 9, 2013, Defendant did not increase the hourly wage paid to Mr. Chavez and the H-2B workers. Instead, Hermes paid Mr. Chavez and the H-2B workers $8.84 per hour for the full season in 2013.

50. Plaintiff and the other H-2B workers incurred significant expenses to come to work for Hermes in the Kansas City area in each of the years between 2012 and 2015. For starters, Mr. Chavez and the other H-2B workers were required to pay, and did pay, approximately $90 each year to obtain work with Hermes, and approximately $150 each year for the processing of their visas.

51. In the same years, Mr. Chavez and the H-2B workers also paid for transportation from their homes to Monterrey, Mexico or Nuevo Laredo, Mexico, where their visas were processed and where they had to wait several days for permission to continue on to Kansas.

52. During the years between 2012 and 2015 Mr. Chavez and the H-2B workers paid for their own hotel and subsistence expenses from the time that they left their homes until the time they arrived in Kansas. They also paid their own bus transportation from Mexico to Kansas.

53. All or almost all of the travel and recruitment expenses incurred by Mr. Chavez and the H-2B employees while traveling to Kansas went unreimbursed by Hermes.

54. For approximately half of the time period covered by this action, Mr. Chavez and the H-2B workers also had to pay for their return transportation to their homes in Mexico, including hotel and subsistence expenses.

55. The expenses incurred by Mr. Chavez and the H-2B workers were primarily for the benefit of their employer, Hermes, within the meaning of the FLSA, 29 C.F.R.

§§ 531.32(c) and 778.217, and within the meaning of Kansas law and Missouri law.

56. Defendant failed to reimburse Mr. Chavez and the H-2B workers during their first week of employment or anytime thereafter for the travel, recruitment fee, and visa expenses they incurred.

57. These expenses operated as de facto involuntary deductions from, and/or a kickback of, the wages of Mr. Chavez and the H-2B workers during their first week of work, and caused the wages of Mr. Chavez and the H-2B workers to fall below the federal minimum wage under the FLSA, the prevailing wage applicable under the H-2B program, and the applicable Kansas or Missouri minimum wages.

58. The failure to reimburse these expenses also violated the rules set forth in the regulations governing the H-2B program, 20 C.F.R. 655.20(j).

*Other allegations*

59. During the course of their employment, the Plaintiff and other H-2B workers handled, sold, or otherwise worked on items that were produced for movement in interstate commerce.

60. Defendant undertook all of the actions and omissions alleged above either directly or through its agents who were authorized to undertake such actions and omissions.

61. The actions and omissions alleged above were willful in that Defendant was aware of its obligations regarding wages, showed reckless disregard for whether its conduct violated federal and state wage laws, or acted without a reasonable basis to believe its actions were in compliance with those laws.

62. Plaintiff brings his FLSA claims on behalf of himself and all other H-2B workers who may opt in to this action pursuant to 29 U.S.C. § 216(b) and who worked for Hermes from March 6, 2014 through the date of preliminary approval of the opt-in class.

63. Plaintiff and the H-2B workers were subject to the same policies and practices of Defendant, and were paid in the same manner as the Plaintiff.

64. Specifically, Defendant failed to pay the Plaintiff and the H-2B workers as required by the FLSA, 29 U.S.C. § 201 *et seq.*

65. Plaintiff is currently unaware of the identities of all of the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from Defendant's records. Defendant should therefore be required to provide Plaintiff with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who worked for Hermes as H-2B workers during the period from March 2014 through the date of the preliminary approval of the FLSA collective action.

### Rule 23 Class Allegations

66. The Plaintiff brings his state law claims on behalf of himself and all other persons similarly situated, pursuant to Fed. R. Civ. P. Rule 23.

67. Plaintiff seeks to represent the following class (the "Class") with regard to his state law claims: all -employees who worked for Hermes as H-2B visa holders from March 6, 2012 through the date of preliminary approval of the class.

68.     Hermes employed approximately 100 landscaping workers in each year covered

    by this action. Many of the workers returned each year to work for the company.

    Upon information and belief, the size of the Class is at least 200 individual

    workers, covering approximately 500 work positions during the entire Class

    period.

69.     The members of the Class are sufficiently numerous that joinder of all members is

    impractical.

70.     Plaintiff is currently unaware of the identities of all of the employees who would

    be members of the Class, but this information is readily ascertainable from

    Defendant's records. Defendant should therefore be required to provide Plaintiff

    with a list – including last known addresses, telephone numbers, and email

    addresses if known – of all individuals who worked as H-2B workers for Hermes

    beginning in March 2012.

### *Existence and Predominance of Common Questions*

71.     Common questions of law and fact exist as to Plaintiff and all members of the

    Class and predominate over questions affecting only individual Class members.

72.     These common questions include:

    a)     Whether Defendant failed to pay Plaintiff and the Class members for all of

    the hours that they worked, in violation of Missouri and Kansas law and in breach

    of Defendant's contracts with Plaintiffs;

    b)     Whether Defendant failed to pay Plaintiff and the Class members at a rate

    of time and one half of their regular rate of pay for all hours worked over 40 in a

work week, in violation of Missouri and Kansas law and in breach of Defendant's contracts with Plaintiffs;

c)     Whether Defendant required Plaintiff and the Class members to incur expenses in the purchase of uniforms which reduced their wages below the legal minimum wage and below the applicable prevailing wage rate during the weeks in which the expenses were incurred, in violation of Missouri and Kansas law, and in violation of Defendant's contracts with Plaintiffs;

d)     Whether the transportation, hotel and subsistence expenses Class members incurred in getting from their homes in Mexico to Defendant's business location and back were for the primary benefit of Defendant and constitute de facto deductions from wages under Missouri and Kansas law, and in violation of the H-2B regulations;

e)     Whether the visa application fees and recruitment fees charged to Mr. Chavez and Class members were for the benefit of Defendant and constitute de facto deductions from wages under Missouri and Kansas law, and in violation of the H-2B regulations; and

f)     Whether Defendant failed to pay Class members the proper prevailing wage rate in 2013 in breach of the H-2B regulations and Defendant's contracts with the Plaintiff and Class members.

g)     Whether the terms and conditions of work set forth in Defendant's Form 9142 are, or are incorporated into, the work contracts of the Class members;

h)      Whether Defendant breached the work contracts of the Class members by failing to pay wages as required and by failing to reimburse transportation, visa, and recruitment fee expenses; and

i)      Whether Defendant received and accepted the direct benefit of the Class members' labor and whether Defendant's continued retention of such benefit would be unjust.

*Typicality*

73.   Members of the proposed class have all been subject to the same unlawful practices of Defendant, and their claims arise out of these same practices.

74.   Plaintiff and the Class members have the same statutory rights under Missouri and Kansas law and are all non-exempt employees within the meaning of Missouri and Kansas law.

75.   Plaintiff and the Class members suffered similar types of damages.

76.   Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff was an H-2B worker who did landscaping work for Hermes and suffered the same labor law violations as other employees.

77.   Plaintiff's interests are co-extensive with the interests of the Class members; Plaintiff has no interest adverse to the Class members.

78.   Defendant acted or refused to act on grounds generally applicable to the Class, therefore making final injunctive relief and declaratory relief appropriate as to the Class as a whole.

79. Plaintiff will fairly and adequately represent the interests of the Class members. His interests do not conflict with the interests of the members of the Class he seeks to represent.

80. Plaintiff understands that, as class representative, he assumes a responsibility to the class to represent its interests fairly and adequately.

81. Plaintiff has retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why this Plaintiff and his counsel will not vigorously pursue this matter.

*Superiority*

82. A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

83. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct.

84. Further, it would be difficult for individual members of the Class to effectively individually obtain redress for the wrongs done to them. If individual actions were to be brought by each member of the Class, the result would be a multiplicity of actions, creating hardships for members of the Class, the Court, and the Defendant.

85. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the Court system.

86. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

87. This case does not present individualized factual or legal issues which would render a class action difficult.

88. In the alternative, the Class may be certified because:

(a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c) Defendant have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## Causes of Action

## I. Fair Labor Standards Act (Collective Action Claim)

89. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

90. The Plaintiff and the other H-2B workers regularly worked more than 40 hours in a single work week.

91. Defendant willfully failed to pay Plaintiff and the other H-2B workers an overtime premium of one half of their regularly hourly rate for every hour they worked above 40 in a work week.

92. Defendant's failure to pay an overtime premium for hours above 40 in a work week violates the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

93. Defendant also violated the FLSA by failing to reimburse the Plaintiff and the other H-2B workers for pre-employment expenses, including travel, visa, and recruitment expenses, which were primarily for the benefit of Hermes, and which reduced Plaintiff's and the other H-2B worker' wages below the minimum wage during their first week of work for Hermes in violation of the FLSA, 29 U.S.C. § 206(a) and its implementing regulations

94. Defendant also violated the FLSA by failing to keep records as required by statute, 29 U.S.C. § 211(c).

95. The Plaintiff and the other H-2B workers are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

96. The Plaintiff and the other H-2B workers are also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

97. The Plaintiff and the other H-2B workers also seek, and are entitled to, the attorneys' fees incurred by their counsel, pursuant to 29 U.S.C. § 216(b).

## II.  Missouri Overtime law, Mo. Rev. Stat. § 290.500, *et seq.* (Class Claim)

98.  The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

99.  At all times material herein, Plaintiff and other similarly situated employees – the other Class members – have been entitled to the rights, protections, and benefits provided under Mo. Rev. Stat. § 290.500, *et seq* during the time that they worked in Missouri

100.  Mo. Rev. Stat. § 290.502 regulates the payment of minimum wages and Mo. Rev. Stat. § 290.505 regulates the payment of overtime compensation by Missouri employers.

101.  Defendant is subject to the minimum wage requirements of Mo. Rev. Stat. § 290.502 and the overtime pay requirements of Mo. Rev. Stat. § 290.505 because it is an employer in the state of Missouri under Mo. Rev. Stat. § 290.500(4) and Plaintiff and the Class members are employees under Mo. Rev. Stat. § 290.500(3).

102.  Defendant violated Mo. Rev. Stat. §§ 290.502 and 290.505 by failing to properly pay Plaintiff and the other Class members for all hours worked and failing to fully pay Plaintiff and the other Class members for overtime during the time that they worked in Missouri.  In the course of perpetrating these unlawful practices, Defendant willfully failed to keep accurate records of all hours worked by employees as required by Mo. Rev. Stat. § 290.520.

103. Plaintiff and the other Class members, are victims of an unlawful and entity-wide compensation policy. Defendant continues to apply and enforce this policy and thereby continues to violate Mo. Rev. Stat. §§ 290.502 and 290.505.

104. Plaintiff and the other Class members are entitled to damages equal to amount of unpaid wages for the unrecorded and unpaid time worked and for overtime premium pay within at least the two years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew or showed reckless disregard for the matter of whether its conduct was prohibited.

105. Defendant acted in bad faith and without reasonable grounds to believe its actions and omissions were compliant with Mo. Rev. Stat. §§ 290.502 and 290.505. As a result thereof, Plaintiff and the other Class members are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described above, pursuant to Mo. Rev. Stat. § 290.505.

106. As a result of these willful violations of the wage and overtime provisions under Mo. Rev. Stat. § 290.505, Plaintiff and the other Class Members are entitled to recover wages and overtime compensation that have been unlawfully withheld by Defendant, together with an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and costs of this action under Mo. Rev. Stat. § 290.527.

III. **Kansas Minimum Wage and Maximum Hours Law, K.S.A. § 44-2201 *et seq.* (Class Claim)**

107. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

108. If the Court finds that the FLSA does not apply to Hermes or to the Plaintiff and the other Class Members, the Plaintiff and other Class members are entitled to recover unpaid wages under the Kansas Minimum Wage and Maximum Hours Law, K.S.A. § 44-1201, *et seq.* for the time they worked in Kansas.

109. If Defendant is not an "employer" under the FLSA, it is an "employer" under K.S.A. § 44-1202 because it allowed or permitted Plaintiff and the other Class Members to work in Defendant's business interest. Defendant failed to pay Plaintiff and other H-2B workers an overtime premium of one half of their regularly hourly rate for every hour they worked above 46 in a work week when they worked in Kansas, in violation of the Kansas Minimum Wage and Maximum Hours Law

110. Plaintiff and the other Class members are entitled to the unpaid wages as mandated by the Kansas Minimum Wage and Maximum Hours Law.

111. Plaintiff and the other Class members also are entitled to recover attorneys' fees incurred by their counsel, costs of Court, and prejudgment and postjudgment interest.

## IV. Kansas Wage Payment Act, K.S.A. § 33-313, *et seq.* (Class Claim)

112. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

113. Defendant is an "employer" under K.S.A. § 313(a) because it is an organization that employed Plaintiff and other Class Members in Kansas.

114. Plaintiff and other Class Members are "employees" under K.S.A. § 313(a) because Defendant allowed or permitted them to perform work in Kansas.

115. Defendant failed to pay Plaintiff and other Class Members all of the wages to which they were entitled under state and federal law for the time they worked in Kansas, in violation of K.S.A. § 314.

116. Defendant's conduct in failing to properly compensate Plaintiff and other Class Members was willful, because Defendant was aware of its obligations regarding wages, showed reckless disregard for whether its conduct violated federal and state wage laws, or acted without a reasonable basis to believe its actions were in compliance with those laws.

117. Because Defendant's conduct was willful, Defendant is required to pay up to double the amount owed as wages to Plaintiff and other Class Members, under K.S.A. § 315.

118. Plaintiff and other Class Members also are entitled to recover all other amounts allowed as damages under K.S.A. § 44-313 *et seq*.

## V.  **Breach of Contract (Class Claim)**

119. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

120. The terms and conditions provided in the temporary labor certification (ETA Form 914B), its accompanying attestations, and the law and regulations applicable to the H-2B program constituted employment contracts between

Plaintiff and the other Class members and Defendant, which contracts were supported by adequate consideration.

121. Plaintiff and the other Class members satisfactorily performed all employment duties and responsibilities required of them by the employment contracts with Defendant.

122. Defendant breached its employment contracts with the Plaintiff and the other Class members o by compensating the Plaintiff and the other Class members below the applicable H-2B prevailing wages for their work; by failing to pay Plaintiff and the other Class members an overtime premium for every hour they worked above 40 in any work week; by requiring Plaintiffs and the Class members to incur unreimbursed expenses which reduced their wages below the federal and state minimum wage, and below the applicable H-2B prevailing wage; and by otherwise failing to comply with applicable federal and state employment-related laws and regulations

123. Defendant's breach of the employment contracts caused Plaintiff and the other Class members substantial injuries, for which Plaintiff and the other Class members are entitled to actual and consequential damages and prejudgment interest.

## VI.    Breach of Contract as to 2013 Wage Rate

124. Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

125. Defendant failed to pay Plaintiff and the other Class members the prevailing wage of $12.37 per hour beginning in July of 2013 and continuing until the end of the 2013 season, as required in the Supplemental Prevailing Wage Determination sent to Defendant by the DOL that year.

126. By failing to pay the legally-mandated prevailing wage rate, Defendant breached its contracts with Plaintiff and the other Class members and are liable to Plaintiff and the other Class members for damages.


## VII.    Quantum Meruit (Class Claim)

127. Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

128. If the Court finds that the work contract did not contain a lawful wage applicable to the work duties performed by Plaintiff and the other Class members, the Plaintiff and the other Class members are entitled to recover the prevailing wage applicable to those tasks as a matter of quantum meruit.

129. Defendant requested that Plaintiff and the other Class members provide labor for Defendant's landscaping business.

130. Plaintiff and the other Class Members provided labor and incurred significant expenses, including travel expenses, for the benefit of Defendant.

131. Defendant has received and accepted the direct benefit of the labor and expense of Plaintiff and the other Class Members.

132. Defendant's continued retention of the benefits of the labor performed and expenses incurred by Plaintiff and the other Class Members would be unjust.

133. Plaintiff and the other Class Members are entitled to compensation for the fair and reasonable value of the labor and expenses they provided to Defendant.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

WHEREFORE, Plaintiff requests that this Court enter an Order:

a. assuming jurisdiction over this action;

b. declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allowing H-2B workers to opt into the action;

c. certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing his attorneys as Class Counsel;

d. declaring that Defendant violated the FLSA, Kansas law, and Missouri law;

e. permanently enjoining Defendant from further violations of the FLSA, Kansas law, and Missouri law; granting judgment to Plaintiff and the other H-2B workers that opt-in pursuant to 29 U.S.C. § 216(b) on their FLSA claims and awarding each of them their unpaid overtime and other wages and an equal amount in liquidated damages;

f. Granting judgment to Plaintiff and the other Class members on their Kansas and Missouri law claims and awarding each of them their unpaid overtime and other wages as well as liquidated damages provided for by statute;

g. Granting judgment to Plaintiff and the other Class members for breach of their contracts with Defendants, and awarding each of them their actual and consequential damages;

h. Granting judgment to Plaintiff and the other Class members on their quantum meruit claim and awarding each of them damages for that claim; Awarding Plaintiff and the other Class members prejudgment and postjudgment interest as allowed by law; Awarding the Plaintiff and the other Class members their costs and reasonable attorneys' fees; and Granting such further relief as the Court finds just.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial of this matter.

DATED:     Overland Park, Kansas
           March 6, 2017

                        DUGAN SCHLOZMAN LLC

                        /s/ _____
                        Heather Schlozman
                        Mark Dugan
                        8826 Santa Fe Drive, Suite 307
                        Overland Park, Kansas 66212
                        ph: 913-322-3528
                        fax: 913-904-0213
                        heather@duganschlozman.com


                        KAKALEC & SCHLANGER, LLP

                        /s/ Patricia Kakalec
                        (Pro hac motion to be submitted)
                        Patricia Kakalec
                        85 Broad Street, 18th Floor
                        New York, NY 10004

T: (212) 500-6114 x103
F.  (646) 612-7996
pkakalec@kakalec-schlanger.com

*Attorneys for Plaintiff*