**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**ANTONIO CHAVEZ RODRIQUEZ,** et al.,

    **Plaintiffs,**

    v.

**HERMES LANDSCAPING, INC.,**

    **Defendant.**

Case No. 17-2142

## MEMORANDUM & ORDER

This matter comes before the court upon plaintiffs' Motion to Certify Class (Doc. 54). For the reasons explained below, plaintiffs' motion is granted.

### I.    Background

Plaintiffs Antonio Chavez Rodriguez, Isaac Chavez Duarte, and Jose Alfredo Soto Servin filed their Second Amended Complaint (Doc. 27) on August 16, 2017. Plaintiffs are Mexican nationals who came to the United States under the federal H-2B or H-2R temporary foreign worker visa programs to work for defendant Hermes Landscaping, Inc. in Lenexa, Kansas. The H-2B program is a guest-worker visa program, and it allows persons "having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The H2-R visa program is for returning H-2B workers. Plaintiffs claim that defendant has sponsored workers since 2012 and in recent years has sponsored around 100 workers annually—105 in 2016; 90 in 2015; 115 in 2014; 92 in 2013; 100 in 2012.

-1-

Plaintiffs claim defendant failed to pay them for all the hours they worked, including overtime doing residential and commercial landscape work for defendant in the greater Kansas City area, as well as incurring work and travel expenses for which they were not reimbursed.

They bring this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219, ("FLSA"); the Kansas Wage Payment Act, Kan. Stat. Ann. § 44-312–44-340 ("KWPA"); the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500–290-530; as well as for breach of contract and quantum meruit claims. Plaintiffs bring this suit on behalf of themselves and all other H-2B or H-2R workers who worked for defendant since 2012 and who may seek to opt into the FLSA suit.

On January 4, 2018, the parties stipulated to conditional certification and notice of collective action to send to putative class members (Doc. 46), which the court entered on January 10, 2018. (Doc. 49.) On February 15, 2018, plaintiffs filed their motion to certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3) for claims II (Missouri Overtime Compensation Violation); III (Kansas Wage Payment Violation); V (Breach of Contract); VII (Prevailing Wage Rate); and VIII (Quantum Meruit); to be appointed class representatives; to have their counsel appointed as class counsel, and for authorization to send notices to putative class members. Defendant opposes certification under Rule 23.

**II.     Legal Standard For Class Certification Under Fed. R. Civ. P. 23**

Plaintiffs seek certification of their Kansas and Missouri claims as a class action pursuant to Fed. R. Civ. P. 23. "Rule 23 permits one or more individuals to sue as representative parties on behalf of all members of a class if certain preconditions are met." *Id.* It is within the court's broad discretion to certify a class. *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)).

The court is required to perform a "rigorous analysis" before determining that the Rule 23 prerequisites have been met. *Id*. (quoting *Dukes*, 564 U.S. at 351.) And this "rigorous analysis" will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Dukes* at 351.

To obtain class certification, the moving party must show that the requirements of Fed. R. Civ. P. 23 are met. These requirements include first showing that:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4).

Plaintiffs must also show that the proposed class falls under one of the categories delineated in Rule 23(b). Plaintiff seeks classification under Rule 23(b)(3), which requires a finding of predominance (that "the questions of law or fact common to class members predominate over any questions affecting only individual members,") and superiority (that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). Fed. R. Civ. P. 23(b)(3).

**III.  Discussion**

Plaintiffs seek Rule 23 certification for three classes based on their state wage law claims, breach of contract claims, and quantum meruit claim.

    **A. Proposed Class Definitions**

Plaintiffs seek to bring this case on their own behalves and on behalf of all other H-2B or H-2R workers employed by defendant since 2012. They propose: (1) a Main Class, defined as: "all employees who worked for Hermes as H-2B or H-2R visa holders from March 6, 2012 through the date of preliminary approval of the class; (2) an Hours Worked Subclass, defined as: "all employees who worked

-3-

for Hermes as H-2B or H-2R visa holders from March 6, 2012 through the date of preliminary approval of the class who worked as crew members" (Doc. 55, at 5); and (3) a 2013 Subclass defined as "all employees who worked for Hermes as H-2B or H-2R visa holders between July 9, 2013 and the end of 2013."

These classes are easily determinable. The main class will include all of defendant's H-2B or H-2R visa holding employees since March 6, 2012. From that group, all crew members will be subtracted and constitute group 2—the hours worked subclass. From those two groups, all workers who worked between July 9, 2013 and the end of 2013 will be subtracted and constitute their own third group—the 2013 subclass. The court finds these definitions sufficiently clear and ascertainable.

Generally, the court would examine each class and subclass individually to determine whether each met Rule 23's requirements. All of the claims plaintiffs seek to certify under Rule 23 relate to plaintiffs' central allegation: that defendants underpaid plaintiffs. Likewise, the proposed classes consist of defendant's employees, who were recruited from Mexico to participate in the H-2B or H-2R visa programs, during a specific timeframe, in the Kansas City area. The slight differences in the subgroups— only "crew members" and workers who worked "between July 9, 2013 and the end of 2013"—do not substantially alter the court's analysis. Because the court finds the classes and claims in this case so factually and legally similar, the classes and claims will be considered together, unless otherwise noted.

### B. Rule 23(a) Requirements

#### 1. Numerosity

Under Rule 23, a class must be "so numerous that joinder of all members is impracticable." Plaintiffs argue that they meet this requirement because courts in this district have certified classes with as few as twenty members; the individual claims are relatively small

amounts; and plaintiffs are geographically dispersed, non-English speakers, who are unfamiliar with our legal system, and relatively unsophisticated.

Defendant responds that joinder is not impracticable because all approximately 135 class members can join the conditionally certified collective action, for which notice has already been sent out. Plaintiffs replied that the proposed class action claims are not duplicative of the FLSA collective action claims because the FLSA claims do not cover all claims in this case.

The court finds that the nature of the class demonstrates that joinder would be impracticable. The parties estimate that there are 100 or so putative class members. Plaintiffs claim that defendant has sponsored around 100 workers annually—105 in 2016; 90 in 2015; 115 in 2014; 92 in 2013; 100 in 2012. Even for the 2013 subgroup, which could potentially have the smallest number of putative class members, the court finds that typicality is met. While a number in and of itself does not satisfy the numerosity requirement, the court notes that classes of smaller size have been certified. Plaintiff's argument that the parties are geographically decentralized, are not familiar with our courts, do not speak English at least as a first language, and potentially have small claims all make joinder impracticable. The numerosity requirement is met.

### 2. Commonality

Under Rule 23(a)(2), the plaintiff must demonstrate that there is some question of fact or law common to the class. The common question, though, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. According to plaintiff, the common issues in this case include:

a) Whether Defendant failed to pay Plaintiffs and the Class members for all of the hours that they worked, in violation of Missouri and Kansas law and in breach of Defendant's contracts with Plaintiffs;

b) Whether Defendant failed to pay Plaintiffs and the Class members at a rate of time and

-5-

one half of their regular rate of pay for all hours worked over 40 in a work week, in violation of Missouri and Kansas law and in breach of Defendant's contracts with Plaintiffs;

c)  Whether Defendant required Plaintiffs and the Class members to incur expenses in the purchase of uniforms which reduced their wages below the legal minimum wage and below the applicable prevailing wage rate during the weeks in which the expenses were incurred, in violation of Missouri and Kansas law, and in violation of Defendant's contracts with Plaintiffs;

d)  Whether the transportation, hotel and subsistence expenses Class members incurred in getting from their homes in Mexico to Defendant's business location and back were for the primary benefit of Defendant and constitute de facto deductions from wages under Missouri and Kansas law, and in violation of the H-2B regulations;

e)  Whether the visa application fees and recruitment fees charged to the Plaintiffs and Class members were for the benefit of Defendant and constitute de facto deductions from wages under Missouri and Kansas law, and in violation of the H-2B regulations; and

f)  Whether Defendant failed to pay Class members the proper prevailing wage rate in 2013 in breach of the H-2B regulations and Defendant's contracts with the Plaintiffs and Class members.

g)  Whether the terms and conditions of work set forth in Defendant's Form 9142 are, or are incorporated into, the work contracts of the Class members;

h)  Whether Defendant breached the work contracts of the Class members by failing to pay wages as required and by failing to reimburse transportation, visa, and recruitment fee expenses; and

i)  Whether Defendant received and accepted the direct benefit of the Class members' labor and whether Defendant's continued retention of such benefit would be unjust.

(Doc. 55, at 7–8.)

Defendant responds that there are many individualized factual determinations that will have to be made if this class is certified. But many wage-related class actions require individualized inquiries to determine certain issues, for example damages. That does not mean that important or overarching legal and factual questions are not common to all claims. Putative plaintiffs were all H-2B or H-2R visa holders who worked for defendant over a specified time frame in the Kansas City Metropolitan Area.

-6-

And whether defendant violated state and federal laws by failing to pay its workers as required by law is an overarching legal question. Commonality is met.

### 3. Typicality

Under Rule 23(a)(3), plaintiffs must demonstrate that their claims or defenses are "typical of the claims or defenses of the class." But the interests and claims of the representative and other class members need not be identical. *Stricklin*, 594 F.3d 1188, 1199 (10th Cir. 2010). Instead, if the interests and claims "are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99 (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).

As with the commonality requirement, typicality is met. Although defendant lists various factual differences between putative class members' situations, their claims are based on the same legal theories and basic factual situation: plaintiffs are all Mexican nationals who were recruited and came to work for defendant in the Kansas City area, during a specified time on H-2B or H-2R temporary work visas.

### 4. Adequacy of Representation

A plaintiff must show that he "will fairly and adequately protect the interests of the class" to comply with Rule 23(a)(4). Rule 23(a)(4) requires the class representative to be a member of the class he seeks to represent. The court must determine (1) whether the class representative and class counsel have interests that would conflict with the interests of other class members, and (2) if the class representative and counsel will prosecute the case vigorously on behalf of the class. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citations omitted); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quotation omitted).

Conflicts defeating class certification "must be fundamental and go to specific issues in controversy." *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010) (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). A conflict is fundamental if "some

members of the class claim harm through a representative plaintiff's conduct that resulted in benefit to other class members." *Id*. (citations omitted). A minor conflict will not operate to defeat class certification. *Id*.

Despite defendant's arguments, plaintiffs have shown they adequately represent the proposed class. Plaintiffs are not required to investigate the claims or legal issues involved in this case. They are not required to meet with the other putative class members. Those tasks are commonly undertaken by class counsel. Plaintiffs' affidavits state that they understand that they have a duty to stay up-to-date with this case and act in the best interests of the entire class and that it is their responsibility to make sure that the case is prosecuted on behalf of the entire class. The affidavits also say that plaintiffs have already traveled by bus from Mexico to provide information for this case and that they understand they may have to do so again for trial. The court finds no evidence of a fundamental conflict.

Defendant does not seem to argue that plaintiffs' counsel is not adequate and nothing before the court suggests that they are not. Both plaintiffs and their counsel are therefore adequate to represent the classes. Plaintiffs have met the requirements of 23(a).

### C. Rule 23(b)(3)

After determining that the Rule 23(a) factors are met, the court must examine whether plaintiffs have shown that their proposed class action falls into one of the types of class actions listed in Rule 23(b). Plaintiffs claim that their class action falls under Rule 23(b)(3), which requires plaintiffs to show that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." When evaluating whether a class action falls under Rule 23(b)(3), the court considers:

>   (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

>    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>    (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

It is the district court's "'duty to take a close look at whether common questions predominate over individual ones.'" *Roderick Revocable Living Tr.*, 725 F.3d at 1219 (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quotation omitted)). The predominance factor is "'far more demanding'" than the commonality requirement of Rule 23(a). *Id.* at 1220 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). Predominance is satisfied "if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication." *Eatinger*, 271 F.R.D. at 261 (citations omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.

Further, "[t]he nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 633–34 (D. Kan. 2008) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). If the putative class members must present evidence that will vary from member to member to establish a prima facie case, then it is an individual question. *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 690 (D. Kan. 2009) (citing *Blades*, 400 F.3d at 566; *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)). But if the same evidence will establish a prima facie case for all class members, then the question is a common one. *See id.* "When one or more of the central issues in the action are common to the class and can be

said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)).

Predominant legal issues that are key to each plaintiffs' claim can be resolved for the class based on defendant's own records and the discovery already produced in this case. For plaintiffs' wage rate claims, the court can determine what plaintiffs were entitled to be paid as H-2B or H-2R visa holders and what defendant's policies were on paying workers. Whether the visa documents constituted contracts that required defendant to pay workers a particular rate of pay is another legal question that can be resolved for the class. Although plaintiffs' damages will likely be resolved individually, this is not dispositive.

Despite the potential for differences among plaintiffs—as defendant thoroughly briefed—the potential for the proposed class action to generate common answers predominates. The potential for dissimilarities within the class does not materially impede the potential for common answers.

### 2. Superiority

Plaintiff claims that a class action is the superior method for resolving plaintiffs' claims because plaintiffs are unlikely to bring individual claims due to the small amount of the individual claims; because they do not reside in the United States and do not understand our legal system; this court has an interest in resolving these claims together rather than in various state and federal courts in Kansas and Missouri; and the factual and legal issues involved have so much in common it makes sense to manage the claims as a class.

The court agrees. There is no evidence in the record that suggests that individual plaintiffs would be able to bring these claims on their own. To the contrary, it is likely not feasible given their geographic dispersal, the language barrier, their general legal unsophistication, and especially, the reality that it would not be economically feasible to bring these claims individually. The court agrees that it is desirable to resolve the common issues of law and fact in a single forum. Litigating these claims in various courts raises a risk of inconsistent judgments that, if realized, would fail to establish what defendant is required to do under law, and a risk that plaintiffs' claims will be resolved inconsistently.

In conclusion, the court finds that plaintiffs have met the Rule 23(a) and (b) requirements for class certification for claims II (Missouri Overtime Compensation Violation); III (Kansas Wage Payment Violation); V (Breach of Contract); VII (Prevailing Wage Rate); and VIII (Quantum Meruit). Plaintiffs' motion is granted.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion to Certify Class (Doc. 54) is granted.

Dated September 5, 2018, at Kansas City, Kansas.

    s/ Carlos Murguia
    **CARLOS MURGUIA**
    **United States District Judge**