IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTONIO CHAVEZ RODRIGUEZ,
on behalf of himself and all others
similarly situated, et al.,

        Plaintiffs,

v.                                                                                                  No. 17-2142-JWB-KGG

HERMES LANDSCAPING, INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiffs' unopposed Motion for Final Settlement Approval (Doc. 112). After a Final Settlement Hearing ("Hearing") on June 3, 2020, with no class members appearing to object or having filed any written objections and notice of the Hearing being provided as required by the Preliminary Approval Order (Doc. 103), the matter is fully briefed. For the reasons stated herein, Plaintiffs' motion to approve the proposed Settlement Agreement is GRANTED.

    **I.**    **Background and Facts**

The named Plaintiffs in this action – Antonio Chavez Rodriguez, Isaac Chavez Duarte, and Jose Alfredo Soto Servin – and the class members are Mexican nationals who came to Kansas to work for Defendant Hermes Landscaping, Inc. ("Hermes") as part of the guest worker visa program commonly known as the "H-2B program." (Second Am. Compl. ¶ 25.) Plaintiffs brought this action as both an opt-in collective action under the Fair Labor Standards Act ("FLSA") and as a class action under Federal Rule of Civil Procedure 23 ("Rule 23"). Plaintiffs allege violations

1

related to the wages paid to the H-2B worker class members and the expenses incurred by the workers for visas, recruitment, and travel.

On September 5, 2018, Judge Murguia granted Rule 23 certification for three classes under this action:

> a Main Class, defined as: all employees who worked for Hermes as H-2B or H-2R visa holders from March 6, 2012 through the date of preliminary approval of the class; (2) an Hours Worked Subclass, defined as: all employees who worked for Hermes as H-2B or H-2R visa holders from March 6, 2012 through the date of preliminary approval of the class who worked as crew members (Doc. 55 at 5); and (3) a 2013 Subclass defined as all employees who worked for Hermes as H-2B or H-2R visa holders between July 9, 2013 and the end of 2013.

(Doc. 76 at 3-4.)

After depositions and significant discovery, the parties settled all claims through mediation with the assistance of Joe Eischens, an experienced labor and employment attorney and mediator. Under the agreement, Hermes will pay, in two installments, a total of $415,000, in addition to bearing the cost of mediation. The settlement benefits as many as 154 current and former employees and will resolve all claims in the case. Attorneys' fees will comprise 33% of the funds to be paid under the Settlement – an amount of $133,333 – after deduction of expenses in the amount of $15,000 from the common fund. Although the settlement primarily disposes of the Plaintiffs' Rule 23 class action claims, the six individuals who joined the action as opt-in plaintiffs under 29 U.S.C. § 216(b) will also release their FLSA claims.

Class members and opt-in Plaintiffs will receive settlement amounts ranging from a minimum of $250 to a maximum of $4,200 (before required withholdings). (May 29, 2020 Decl. of Patricia Kakalec ("Kakalec Decl.") ¶ 5.) As provided by the agreement, the amounts are determined primarily by the length of time that class members worked for Hermes. The six opt-in Plaintiffs receive additional compensation for their FLSA claims while the three named

Plaintiffs each receive an additional $7,500 as service awards. (Doc. 101-1; Ex. C §5.) The notice provided to the class members informed them of the specific amount they would receive under the agreement and provided a method by which they could object to the agreement.

The parties then sought preliminary approval of their settlement agreement, which was granted by Judge Murguia. (Doc. 103.) Plaintiffs sent notice of the settlement as provided in the agreement. With no objections to the settlement being received, Plaintiffs filed an unopposed Motion for Final Settlement Approval (Doc. 112.) A hearing on the final settlement agreement was held on June 3, 2020.

## II.     Standard

Decisions approving class action settlements fall within the district courts' sound discretion. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). The court may approve a proposed settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

## III.    Analysis

Traditionally, the Tenth Circuit has instructed courts to analyze four factors when deciding if a Rule 23 agreement is fair, reasonable, and adequate:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil, Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

However, new amendments to Rule 23 became effective on December 1, 2018. These amendments gave four new factors a court must find to render an agreement as fair, reasonable, and adequate:

3

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The advisory committee noted these new factors were not meant to displace any circuit's unique factors, but rather focus courts on the core concerns in deciding whether to approve a proposed settlement. *See* Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment. The Tenth Circuit's additional factors largely overlap, with only the fourth factor not being subsumed into the new Rule 23. Accordingly, the court considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors below.

### A. The Settlement Class was Adequately Represented

Courts have analyzed the adequacy of representation by evaluating adequacy under Rule 23(a)(4). *See In re: Samsung Top-Load Washing Mach. Mktg., Sales Practices and Prod. Liab. Litig.*, No. 17-ml-2792-D, 2020 WL 2616711 (W.D. Ok. May 22, 2020); *O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2019 WL 143711, at *6 (N.D. Cal. Mar. 29, 2019); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-1720, 2019 WL 359981, at *15 (E.D.N.Y. Jan. 28, 2019). Both class counsel and class representatives were previously found to be adequate by Judge Murguia under this standard. (Doc. 76 at 8.) While this was a past evaluation of competence, the facts illustrate adequate representation throughout the case.

Class counsel drafted motions opposing applications for interlocutory appeal, defended attacks on class certifications, and traveled to Mexico City for depositions. The named Plaintiffs—

the class representatives—all reside in Mexico and traveled 17 hours each way to Mexico City from their homes to participate in the deposition process. Further, class representatives spent several days in Mexico City preparing for and giving their depositions in the case. Balancing the entirety of the case with the ultimate resolution and settlement reached supports a finding of adequate representation.

### B. Proposal was Negotiated at Arm's Length

The Tenth Circuit's fair and honest negotiation requirement can be subsumed under Rule 23's second factor—arm's-length negotiation. Counsel for both parties are experienced class action attorneys. The Settlement Agreement was negotiated through a formal mediation with Joe Eischens—an experienced labor and employment attorney—serving as mediator. This mediation took place after significant discovery, including depositions. Nothing in the record suggests the settlement agreement was the product of collusion. On the facts, the settlement agreement before the court is a product of an arm's length negotiation.

### C. Relief Provided to the Settlement Class is Adequate

Next, the Tenth Circuit requires the court to consider "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter*, 314 F.3d at 1188. These considerations largely overlap and can be subsumed under Rule 23's requirement that the settlement agreement's adequacy be measured against the "costs, risks, and delay of trial and appeal" of the underlying case. Rule 23(e)(2)(C)(i).

If the case were to move forward in litigation, there are serious questions of law and fact that place Class Members' ability to recover in jeopardy. First, the case presented significant questions about the applicability of the Motor Carrier Exemption to the FLSA, which if applicable

5

could preclude or substantially limit class H-2B workers' claims for overtime wages. 29 U.S.C. 13(b)(1). Second, Plaintiffs' claims that a higher prevailing wage rate was required to be paid to H-2B workers in 2013 was placed in serious doubt as the Secretary of Labor recently issued a notice indicating employers need not pay the higher wages at issue. *See* Notice of Withdrawal, 85 Fed. Reg. 14706 (Mar. 9, 2020). With most of Plaintiffs' damages being based upon overtime wages, anything undercutting the viability of overtime damages could have significantly diminished the value of the case. Further, with class counsel representing in the Hearing there would be significant discovery—with added costs of travel since most plaintiffs were in Mexico— combined with defendant's readiness to move for decertifying the class and the resulting appeals process from that, the costs and time of moving forward in litigation would be substantial.

Next, the court considers adequacy of the effectiveness of the "proposed method of distributing relief to the class, including the method of processing class-member claims." Rule 23(e)(2)(C)(ii). Counsel represented in the Hearing that checks will be distributed by hand by Defendant to those class members who are employed by Defendant at the time of distribution. Checks will be mailed to other class members using Estafeta, a private courier providing service between the United States and Mexico. Further, the calculations of awards were done using data provided by Defendant and with the help of a data analyst. The court is satisfied the Settlement Agreement ensures proper process of claims and efficient distribution of relief.

Finally, with the proposed award of attorneys' fees being discussed below, the court considers the adequacy of the timing of the attorneys' fees and the Settlement Agreement. Payment of attorneys' fees will be made half at the time of the first settlement payment and half at the time of the second settlement payment. The Settlement Agreement contains standardized terms and does not raise any concerns about Class Members not receiving their fair share or being

6

required to surrender rights that should require separate negotiations. The court finds the relief provided to Class Members is adequate.

### D. Settlement Agreement treats the Settlement Class equitably

The fourth and final factor the court must consider is whether the proposed agreement "treats class members equitably relative to each other." Rule 23 (e)(2)(D). When a service award "perform[s] the legitimate function of encouraging individuals to undertake the frequently onerous responsibility of [serving as the] named class representative" additional money awards are reasonable. *Nieberding v. Barrette Outdoor Living. Inc.*, 129 F. Supp. 3d 1236, 1251 (D. Kan. 2016).

The amount received by each Class Member is based upon the number of weeks that individual worked for Defendant, the number of years that individual worked (for travel reimbursement), whether the individual worked in 2013 (for which there is a separate wage claim), and whether the individual opted into the action to bring an FLSA claim. Additionally, the named plaintiffs—receiving service awards—conferred with Class Counsel, provided statements and discovery responses, travelled to Mexico City and participated in depositions, and fulfilled all their duties as class representatives. The court finds the Settlement Agreement treats all class members equitably and the service awards of $7,500 to each of the three named plaintiffs are fair.

While the fourth Tenth Circuit factor does not directly overlap with Rule 23's final factor, if all Class Members are treated equitably, counsel for both sides agree the outcome is good, and there are no objections to the Settlement Agreement, it appears the parties agree the settlement is fair and reasonable. Thus, the court finds this Settlement Agreement is fair, reasonable, and adequate under both the Tenth Circuit factors and the newly amended Rule 23(e)(2) factors.[1]

---

[1] While the Settlement Agreement primarily disposes of Plaintiffs' Rule 23 class action claims, those Class Members who joined the action under 29 U.S.C. § 216(b) will also release their FLSA claims. Approving an FLSA settlement

### E. Attorneys' Fees and Costs are Reasonable

Finally, the court considers Plaintiffs' attorneys' request that 33% of the settlement amount after costs—$133,333—be paid as reasonable attorneys' fees, and $15,000 in costs be paid from the settlement amount as reasonable and necessary expenses. When considering a fee application as part of a class settlement, courts consider whether the fees are reasonable. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988); *see also* Fed. R. Civ. P. 23(h). Attorneys' fees may be appropriately awarded from a class action settlement fund "on the theory 'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'" *See In re: Urethene Antitrust Litig.*, No. 04-01616, 2016 WL 4060156, at *4 (D. Kan. July 29, 2016) (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). In fact, "[t]he Tenth Circuit has expressed a preference for the percentage-of-the-fund method of awarding attorney fees in common fund cases." *Id*. (citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995)).

When setting percentage fee awards in common fund cases, the Tenth Circuit has endorsed the use of the *Johnson* factors. *See Brown*, 838 F.2d at 454-55; (noting "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation.") *Id*. The twelve *Johnson* factors include:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

only requires the court to find "the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned." *Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015). This settlement satisfies the FLSA's lower standard.

*Id*.

The time and labor undertaken by Plaintiffs' counsel has been significant; counsel has worked on this case for over three years—logging over 500 hours during this time. Counsel filed a motion for preliminary certification under the FLSA, a motion for leave to conduct depositions in Mexico, a motion for class certification, and an opposition to Defendant's motion for leave for interlocutory appeal to the Tenth Circuit. Counsel traveled to Mexico City to meet with the named Plaintiffs and defend their depositions. Counsel served and responded to discovery requests for both the named plaintiffs and the six opt-in plaintiffs, a task made significantly more complex because most Plaintiffs reside in Mexico and are mono-lingual Spanish speakers. Counsel worked with translators to provide translated interrogatory responses and various statements throughout the litigation.

In addition, this case presented novel and difficult issues as it required analysis of the regulations under the H-2B program, a specific area in which Plaintiffs' counsel Patricia Kakalec has significant experience. Moreover, both class counsel firms are small firms and had to forego other employment for time spent litigating this case. The one-third contingent fee is the amount agreed to under Plaintiffs' counsel's retainer (Kakalec Decl., Ex. B) and is a customary percentage in a case such as this. No class member has objected to the fees in this case. Plaintiffs have recovered meaningful sums – most in the range of several thousand dollars each – as part of the settlement. As set forth in Plaintiffs' counsels' declarations, both attorneys are experienced with federal collective and class litigation. Due to the case being brought on behalf of non-English speakers residing in another country, the case was likely undesirable to other firms. Counsel has not represented the Plaintiffs in prior (or subsequent) cases.

Finally, counsel's out-of-pocket costs totaling $15,000, which are primarily mediation expenses, deposition-related costs, translation expenses, travel to Mexico for depositions, distribution expenses, and court fees, are reasonable. Thus, the court finds the attorney's fee and expenses sought by Plaintiffs' counsel are reasonable.

### IV. Conclusion

Plaintiffs' unopposed Motion for Final Settlement Approval (Doc. 112), including attorneys' fees and costs as set forth in this Order, is GRANTED. The parties are directed to implement and consummate the class settlement according to the terms and provisions of the Settlement Agreement (Doc. 101-1). The court dismisses with prejudice all claims in this action and, except as otherwise explicitly provided for in the Settlement Agreement (Doc. 101-1), does so without costs awarded to either side.

IT IS SO ORDERED this 18th day of June, 2020.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE